### A98A0039. ALEXANDER v. SPORTSLIFE, INC. et al.
### A98A0040. DIENG v. SPORTSLIFE, INC. et al.
#### (502 SE2d 280)

SMITH, Judge.

These companion cases arose from a fight between two players in a "pickup" basketball game at an athletic facility owned and operated by defendant Sportslife, Inc. and its subsidiary corporations Sportslife Town Center, Inc. and Sportslife Town Center II, Inc. ("Sportslife"). Isham W. Alexander III, one of the parties to the altercation, brought an action against Youssouph Boyenge Dieng for battery and against Sportslife in tort and breach of contract, alleging that Sportslife was negligent and breached his membership contract by failing to protect him from an "unreasonable risk of harm."[1] Sportslife answered and filed a cross-claim against Dieng; Dieng answered and filed a counterclaim against Alexander and a cross-claim against Sportslife. The trial court granted Sportslife's motion for summary judgment against both Alexander and Dieng, and they appeal. Because the proximate cause of each man's injuries was not any negligence or breach of contract by Sportslife but his own voluntary and active participation in a fight, we affirm.

1. Alexander complains that Sportslife, and hence by implication the trial court, relied upon an unreported decision of this Court in its motion for summary judgment. Sportslife attached to its motion a copy of the unpublished opinion in *Nelson v. Harris*, 217 Ga. App. XXXI (1995), affirming the grant of summary judgment in favor of Sportslife on the claim of another individual who was struck in the face during a pickup basketball game at a Sportslife facility. While it is understandable that Sportslife would seek to rely upon a recent decision in its favor with virtually identical facts, the rules of this Court clearly provide that "[a]n unreported opinion is neither a physical nor binding precedent but establishes the law of the case as provided by OCGA § 9-11-60 (h)." Court of Appeals Rule 33 (b).

Reliance upon an unreported decision is not, however, as Alexander contends, grounds for reversal of the trial court's decision. The

---

[1] Georgia law recognizes that private duties may be created by a contractual relation and give rise to an action in tort. See *Carey v. Bradford*, 226 Ga. App. 360, 361, n. 1 (486 SE2d 623) (1997).

cases cited by Alexander note that reliance on such opinions is "misplaced," *Dept. of Transp. v. Metts*, 208 Ga. App. 401 (1) (430 SE2d 622) (1993), but none requires or even suggests that reversal is appropriate on this basis alone. Nothing in the trial court's order indicates that it relied exclusively upon the unreported case as the basis for its ruling; it simply granted summary judgment "[a]fter considering the pleadings, affidavits, depositions and arguments of counsel." While Sportslife relied upon the unpublished opinion, it also cited extensively from the published cases contained in that opinion. A summary judgment will be affirmed if it is right for any reason. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991).

2. Both Alexander and Dieng executed releases in favor of Sportslife. Alexander contends the release is impermissibly vague because it does not clearly identify the Sportslife entity or entities released and does not specify which of the multiple Sportslife locations is governed by the release. But we need not reach these issues because the undisputed evidence clearly shows that no conduct of a Sportslife employee proximately caused either party's injuries.

Alexander and Dieng each contends that the other initiated the fight by excessive fouling during play. Alexander acknowledged that he threw the first punch at Dieng because he felt that Dieng had intentionally fouled him. He also claimed that Dieng had his fists clenched and he "thought he was going to come at" him. Dieng likewise acknowledged that he approached Alexander on the sidelines and kicked him in the head two to five minutes after the game was over, although he also testified he thought Alexander was reaching into his gym bag for a weapon to attack him again. A Sportslife employee was present but was not serving as a referee; he was shooting baskets on another court.

"Before any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon. Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause. Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment." (Citations and punctuation omitted.) *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695, 696 (1) (409 SE2d 89) (1991). In *Sapp*, we held that a school was not liable for an attack on a student in the school parking lot when the injured student accosted another student to continue an earlier altercation.

"[A]n intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury unless the criminal act was a reasonably foreseeable consequence of the defendants' conduct." (Citations and punctuation omitted.) *Rawls v. Bulloch County School Dist.*, 223 Ga. App. 234, 236 (477 SE2d 383) (1996). Here, not one but two intervening criminal acts occurred: Alexander's attack on Dieng by striking him in the face with his fist, and Dieng's attack on Alexander by kicking him in the head. See also *Driver v. Leicht*, 215 Ga. App. 694, 695 (452 SE2d 165) (1994) (plaintiff guest injured in quarrel over pool game; even if hosts negligent, not liable to guest who "is an initiator of or active participant in the sequence of events resulting in his injury").

Moreover, while both parties to the altercation presented evidence that the basketball game was "out of hand" and fouls were committed, each also insists that he was attacked without warning. Dieng testified that he had "no idea" that Alexander was going to punch him. Alexander testified, and Dieng agreed, that Dieng's attack on him occurred on the sidelines sometime after the basketball game was over and other players had separated the combatants. Alexander also asserted that Dieng "snuck up behind" him to kick him. If the attacks were unexpected, without warning, or furtive, then the actual participants in the brawl cannot reasonably assert that a Sportslife employee in the general vicinity should have expected or had warning of the attacks.

Assuming without deciding that Alexander and Dieng showed some negligence in Sportslife's supervision and monitoring of the basketball game, the conduct on the part of Sportslife's employee merely gave rise to the occasion which made the injuries possible. Other unforeseeable circumstances, including the intervening attacks by Alexander on Dieng and in turn by Dieng on Alexander, preponderated in causing the injury. Sportslife's conduct was, at best, a remote cause of the injuries sustained. *Wright v. Ashe*, 220 Ga. App. 91, 95 (469 SE2d 268) (1996). Consequently, the trial court correctly granted summary judgment on the negligence claims of Alexander and Dieng.

Alexander's breach of contract claim is likewise without merit. He contends that his membership contract with Sportslife created an implied duty to protect him from "an unreasonable risk of harm." "Damages are given as compensation for the injury sustained as a result of the breach of a contract." OCGA § 13-6-1. See generally *Rogers v. Norvell*, 174 Ga. App. 453, 458-459 (3) (330 SE2d 392) (1985) (physical precedent but subsequently approved as to Division 2; see, e.g., *Whitehead v. Cuffie*, 185 Ga. App. 351, 352 (2) (364 SE2d

87) (1987)). The evidence demonstrates that Alexander's alleged damages were not the result of any breach of duty on the part of Sportslife, whether alleged as tort or breach of contract, and summary judgment in favor of Sportslife was warranted as to this claim.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MAY 1, 1998 —
RECONSIDERATION DENIED MAY 13, 1998.

*Neal H. Howard*, for Alexander.
*H. Michael Harvey*, for Dieng.
*Tittsworth, Grabbe & Spillers, Charles L. Spillers*, for Sportslife, Inc.