A99A0642. SAYED et al. v. AZIZULLAH.
(519 SE2d 732)

SMITH, Judge.

During a family outing, 17-year-old Tariq Sayed drowned at a public park on Lake Lanier. Said and Latifa Sayed, Tariq's parents, brought this action against their nephew, Haroon Azizullah, who was with his younger cousin Tariq in the water some time before he drowned.[1] The trial court found that Tariq was "a healthy seventeen year old male of normal intelligence" and "understood and appreciated the dangers of swimming" and that "as a matter of law he assumed the risk of danger by voluntarily going swimming in a lake

---

[1] The Sayeds have also brought a separate action against the U.S. Army Corps of Engineers, alleging that there was an undertow at the beach and the Corps failed to warn swimmers of its existence.

without using any flotation devices whatsoever." The trial court also found that no implied contract existed between the two cousins "to provide a buddy system when they went swimming together" and granted Azizullah's motion for summary judgment on both grounds. Because we agree with the trial court that Tariq voluntarily assumed the risk of swimming in the lake, we affirm on that basis and do not reach the issue of any duty owed to Tariq.

After Azizullah arrived at the family gathering, Tariq asked him to go swimming and he agreed. Azizullah asked Tariq if he could swim, and he replied that he could and had learned at his local community swimming pool. Tariq also asked and was given permission by his father to swim. But they did not swim at the designated swimming area or beach, which had been pointed out to Tariq earlier by his father; they entered the water from the shore below the picnic area, where a number of children were already in the water. Tariq did not use a life jacket or other flotation device.

According to Azizullah, the area was crowded and muddy, and he decided to swim out into cleaner water, but Tariq responded, "Well, I'm going to stay right here because it's up to my waist, I don't know how to swim that well and I don't want to drown and I don't want to get tired, so I'm going to stay right here." Azizullah swam about 30 or 40 feet further out, and returned to shore in about 15 minutes. As he returned to shore, he was not looking for Tariq and did not see him. Later, as it began to grow dark, Tariq's sisters asked where he was, and a search began. About two hours later, divers located Tariq's body.

The Sayeds offered in evidence an accident investigation report completed by a park ranger and differing somewhat from Azizullah's deposition testimony. The ranger testified by affidavit, and the narrative portion of the report indicates, that Azizullah and Tariq "began swimming away from the sandy beach out into the main part of the lake. The witness stated that the victim said he was too tired to swim out any farther and was going to head back to shore. The witness never looked back to verify that the victim made it back to shore." Tariq's body was recovered in 21 feet of water approximately 30 feet off shore.

While the Sayeds contend that the report suggests Tariq and Azizullah were in deeper water when their conversation took place, no evidence was presented that Tariq intended only to wade and not to swim. He was given permission to swim by his father and told Azizullah that he could swim and had learned at his community pool.

The Sayeds argue that Azizullah allowed Tariq to swim with him, knew Tariq was in a dangerous situation, and breached an obligation to care for Tariq. But according to Azizullah, Tariq never indicated by words or actions that he was in distress, in danger of drown-

ing, needed assistance in returning to shore, or anything other than that he was simply "tired" and intended to return to shore. The Sayeds testified that they had no information contradicting this. The Sayeds also acknowledged below that no express agreement existed for Azizullah to care for or act as a lifeguard for Tariq. But on appeal they contend that by acceding to Tariq's request to swim with him, Azizullah made an "implied" promise to look after him. We do not reach the issue of any duty owed to Tariq, however, because we agree with the trial court that Tariq appreciated the risks of swimming in the lake and voluntarily assumed them.

> Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause. Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment.

(Citations and punctuation omitted.) *Alexander v. Sportslife,* 232 Ga. App. 538, 539 (2) (502 SE2d 280) (1998). The elements of a defense of assumption of the risk are: (1) the plaintiff had some actual knowledge of the danger; (2) he understood and appreciated the risks associated with the danger; and (3) he voluntarily exposed himself to the danger. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 164-165 (3) (493 SE2d 540) (1997).

First, we note that this is not a case involving a child of tender years.

> A young person of the age of this plaintiff is presumed to be capable of realizing danger and of exercising the necessary forethought and caution to avoid it, and is presumptively chargeable with diligence for his own safety, where the peril is palpable and manifest. A boy of fourteen years of age is presumptively chargeable with the same standard of diligence for his own safety as an adult.

*Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13, 17 (2) (329 SE2d 239) (1985). The Sayeds have presented no evidence to rebut this presumption. We also note that there are certain perils that are considered open and obvious as a matter of law. "The danger of drowning in water is a palpable and manifest peril, the knowledge of which is chargeable to the decedent in this case in the absence of a showing of

want of ordinary capacity. [Cit.]" *Bourn v. Herring*, 225 Ga. 67, 69 (2) (166 SE2d 89) (1969). See also *Laite v. Baxter*, 126 Ga. App. 743, 748 (2) (191 SE2d 531) (1972).

Assumption of the risk supported summary judgment despite the allegation of an "implied" duty to supervise in similar circumstances in *Riley v. Brasunas*, 210 Ga. App. 865, 868 (2) (438 SE2d 113) (1993). In *Riley*, a seven-year-old boy was injured while jumping from a trampoline to a chin-up bar while a social guest in another's home. The plaintiffs alleged that an older boy in the household was "'impliedly' instructed by his mother that he was 'in charge' and was to 'watch over' the younger boys." Id. This court held that the danger of falling, like those associated with fire and water, is normally understood even by young children, id. at 867 (1), and that the injured child was "deemed to have assumed the risk as a matter of law. [Cit.]" Id. at 868. We added that any alleged failure of the older child to "watch over" the boy could not be the proximate cause of his injuries, "for the latter's knowing exposure of himself to danger is a bar to recovery. [Cits.]" Id. See also *Barnes v. Fulton*, 213 Ga. App. 806, 808 (446 SE2d 213) (1994).

Here, the undisputed evidence shows that Tariq knew and appreciated the risk of drowning in the lake. But, knowing the risk and the level of his own swimming ability, he chose to swim in an area other than the designated swimming beach without a flotation device. In so doing, he assumed the risk of drowning, and any alleged breach by Azizullah of a duty to supervise Tariq was not the proximate cause of his death.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 23, 1999 — CERT. APPLIED FOR.

*Maurice J. Bernard III*, for appellants.
*Gray, Hedrick & Edenfield, L. Bruce Hedrick*, for appellee.

