A02A0208. SPOONER v. CITY OF CAMILLA.
A02A0209. SPOONER et al. v. CITY OF CAMILLA.
(568 SE2d 109)

RUFFIN, Judge.

Thirteen-year-old Ronald Butler drowned in a body of water located on property owned by the City of Camilla. Susie Spooner, temporary administratrix of the estate, sued the City on behalf of Ronald. In a separate action, Roy Walker, Ronald's father, brought a wrongful death suit against the City.[1] The City moved for summary judgment in both actions, which the trial court granted. In Case No. A02A0208, Spooner appeals. In Case No. A02A0209, Walker appeals. As Spooner and Walker (collectively the "appellants") raise identical

---

[1] Evidently, Ronald lived with the Spooners, who are listed as parties to the wrongful death action. However, the Spooners were not Ronald's adoptive parents, and the trial court granted the City's motion for summary judgment on their claims in the wrongful death action. See OCGA § 19-7-1 (c) (2) (B). Accordingly, notwithstanding the caption, Walker is the only plaintiff in the wrongful death claim.

issues, we have consolidated the cases on appeal. For reasons that follow, we affirm.

1. Before addressing the merits of the appeals, we first address appellants' violations of this Court's rules. The attorneys for Spooner and Walker filed two identical briefs, alleging fourteen enumerations of error. Pursuant to Court of Appeals Rule 27 (c) (1), the sequence of arguments in the briefs should follow the order of the enumerations of error and be numbered accordingly. Here, however, the appellants' briefs contain only three argument sections, which bear no resemblance to the errors as enumerated.

"Our requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court."[2] By ignoring our rules, appellants' lawyers have made our task infinitely more difficult. Moreover, counsel have done a disservice to their clients by creating a risk that arguments will be deemed unsupported and, therefore, abandoned. Nonetheless, we will, to the best of our ability, attempt to discern those arguments that have been supported with argument and citation of authority.

2. On appeal of a trial court's grant of summary judgment, we conduct a de novo review.[3] In so doing, "we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant."[4] We will affirm if the evidence demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[5]

Viewed in this light, the evidence demonstrates that the City acquired approximately 30 acres of land for industrial development. The land contained a pond and a pecan grove. The City also leased out part of the land for farming. At some point in the mid-1990s, the City began excavating dirt from the site for use in various building projects, which created a pit that filled with water.

On June 23, 1998, 13-year-old Ronald was playing with several boys, including his brother, Roger Walker. Spooner, Ronald's aunt and guardian, testified that the boys "wanted to go to the pool. I had talked a whole hour with them concerning swimming that morning. I said 'I would let [Roger] and Little Eric go because [you] can swim, but Ronald [does] not know how.'" According to Spooner, Ronald knew he could not swim and was present when she told the boys not to go to the pool.

---

[2] (Punctuation omitted.) *Bennett v. Moody*, 225 Ga. App. 95, 96 (483 SE2d 350) (1997).

[3] See *Thompson v. City of Fitzgerald*, 248 Ga. App. 725 (548 SE2d 368) (2001).

[4] *Herron v. Hollis*, 248 Ga. App. 194, 195 (546 SE2d 17) (2001).

[5] See *Thompson*, supra.

Later that day, while the boys were riding their bikes, Ronald announced that he wanted to learn how to swim. Ronald, who was following the other boys as they cycled past the dirt road leading to the mining pit, veered away from the boys and headed toward the pit. The boys followed Ronald, yelling at him: "Don't jump in." As Ronald neared the mining pit, he left his bike and jumped into the water-filled pit. Unable to swim, he drowned. Although the other boys tried to save Ronald, they could not.

Spooner, as administratrix of Ronald's estate, sued the City, alleging that the "artificial pondsite" posed an unreasonable risk of harm to young children. According to the complaint, the City was liable for failing to erect any barricades or post any warning signs to prevent such accidents. In a separate action, Roy Walker alleged the City was liable for creating a nuisance and for failing to erect any barricades or warning signs.

The City moved for summary judgment on both actions. In both cases, the trial court issued virtually identical orders granting summary judgment in favor of the City. Specifically, the trial court concluded that: (1) Ronald assumed the risk; (2) the appellants failed to establish the pit was a public nuisance; (3) the City's negligence, if any, was not the proximate cause of Ronald's death; (4) the City breached no duty; and (5) the claim was barred by the Recreational Property Act.[6]

(a) *Negligence.* On appeal, Spooner and Walker contend the trial court erred in finding, as a matter of law, that Ronald assumed the risk by jumping into the mining pit, knowing that he could not swim. They contend that, given Ronald's age, whether he appreciated the risks involved was a jury issue. We disagree.

To establish assumption of the risk, the City must show that: "(1) [Ronald] had . . . actual knowledge of the danger; (2) he understood and appreciated the risks associated with the danger; and (3) he voluntarily exposed himself to the danger."[7] Here, the undisputed evidence shows that Ronald knew the pit was filled with water and that he could not swim, yet he chose to jump into the water. In so doing, he assumed the risk.[8]

Appellants argue that, as a child under the age of 14, Ronald cannot have assumed the risk as a matter of law. It is true that, as a general rule, assumption of the risk is a jury issue.[9] In plain and palpable cases, however, the issue may be decided as a matter of law,

[6] See OCGA § 51-3-20 et seq.
[7] *Sayed v. Azizullah*, 238 Ga. App. 642, 644 (519 SE2d 732) (1999).
[8] See id. at 645.
[9] See *Stewart v. Harvard*, 239 Ga. App. 388, 396 (4) (b) (520 SE2d 752) (1999).

even if the case involves a child under the age of 14.[10] "As to a child between the ages of seven and fourteen, there is no presumption that the child did or did not exercise due care or does or does not have sufficient capacity to recognize danger or to observe due care."[11] Rather, "these issues hinge on the circumstances."[12] But there is no legal "bar to applying assumption of the risk, as a matter of law, to the conduct of a child between these ages when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk."[13]

As mentioned above, Ronald voluntarily jumped into a body of water despite knowing he could not swim. "[T]he dangers associated with fire, falling from heights, and from water are said to be normally understood by young children absent other factors creating additional risks of harm."[14] The appellants assert that Ronald should not be charged with such knowledge because he was "slow in school."[15] However, there is no evidence to support appellants' implicit contention that 13-year-old Ronald was so "slow" that he could not grasp the inherent danger of water, which is generally understood even by very young children.[16] To the contrary, Spooner characterized him as an "intelligent," "perfectly normal boy," who was capable of understanding what he was told. It follows that Ronald was capable of appreciating the risks associated with jumping into water, especially after having been told that very day that he could not go to the pool because he could not swim.

Appellants suggest that a jury issue exists because this was not a natural pond, but a man-made mining pit of an unknown depth. This distinction does not alter the result. The fact that the water-filled pit resulted from an excavation does not obviate the fact that it

---

[10] See id. at 396-397 (4) (b).

[11] Id.

[12] Id. at 397 (4) (b).

[13] Id.

[14] (Emphasis omitted.) Id. at 392 (2). See also *McCall v. McCallie*, 48 Ga. App. 99, 100 (1) (171 SE 843) (1933) ("The danger from fire or water is one that even young children may be said to apprehend.").

[15] Appellants also cite to the affidavit of one of Ronald's teachers, who testified that Ronald "was emotionally immature to the point that he more than likely could not appreciate and recognize the danger of jumping into the mining pit swimming hole where he drowned." The City moved to strike the affidavit, asserting that it constituted a conclusion of ultimate fact, and the trial court granted the motion on this basis. Although the appellants enumerate this ruling as error, they provide no argument as to how the trial court erred in its reasoning. Rather, they simply make conclusory allegations in a footnote that the trial court erred because the expert had a basis for his opinion. Thus, this claim of error has been abandoned. See *Price v. State*, 240 Ga. App. 37, 40 (4) (522 SE2d 543) (1999) (issue abandoned where appellants provide only conclusory allegations).

[16] See *McCall*, supra.

was a body of water. "The artificial character of the water hazard has no bearing on liability or nonliability."[17] Moreover, the fact that such artificial pond has a deep hole or is muddy does not change the analysis.[18]

Under these circumstances, the trial court did not err in concluding that Ronald assumed the risk as a matter of law. And assumption of the risk serves as a complete defense to a claim of negligence.[19] It follows that the appellants' remaining enumerations of error relating to their negligence claims are moot.

(b) *Nuisance.* Appellants contend that the trial court erred in granting summary judgment on their nuisance claim. It is well settled "that [a] municipal corporation, like any other individual or private corporation, may be held liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function."[20] Although the existence of a nuisance is generally a question of fact, under some scenarios, a court can determine as a matter of law that no nuisance exists.[21]

Georgia courts have long held that "[t]he attractive nuisance doctrine does not apply to ponds or other water hazards."[22] And landowners, as a general rule, are "under no obligation to erect barriers or take other precautions to prevent [children] from being injured thereby."[23] Here, however, appellants argue that the mining pit was not an attractive nuisance, but a *general* nuisance. Under this theory, a municipality may be liable for nuisance if the following three conditions are met: (1) the defect or degree of misfeasance rose to a level exceeding that of mere negligence; (2) the act or misfeasance was of some duration and continuous or regularly repetitious; and (3) the City failed to act within a reasonable time after knowledge of the defect or dangerous condition.[24]

Appellants assert that all three criteria have been met. Pretermitting whether the first two have been met, we find the third has not been met as a matter of law. The crux of appellants' com-

---

[17] (Punctuation omitted.) *Montega Corp. v. Grooms,* 128 Ga. App. 333, 338 (7) (196 SE2d 459) (1973).

[18] See *McCall,* supra (deep); *Montega Corp.,* supra (muddy).

[19] See *Sayed,* supra at 644.

[20] (Punctuation omitted.) *City of Bowman v. Gunnells,* 243 Ga. 809, 810 (1) (256 SE2d 782) (1979).

[21] Id. at 811 (2).

[22] *Fickling v. City Council of Augusta,* 110 Ga. App. 330, 332 (138 SE2d 437) (1964). See also *Adams v. Atlanta Faith Mem. Church,* 191 Ga. App. 215, 216 (381 SE2d 397) (1989) ("There is a consistent line of Georgia cases in which ponds have been held not to be 'attractive nuisances' as a matter of law.").

[23] *McCall,* supra.

[24] See *City of Bowman,* supra.

plaint is that the City knew of this water-filled hazard, yet failed to erect some kind of barricade or warning signs. However, as set forth in the attractive nuisance doctrine, landowners are permitted to maintain ponds — either natural or artificial — on their property without erecting fences or barricades.[25] Thus, the City had no duty to act in the manner suggested by the appellants, and it cannot be held liable for failing to do so. It follows that the trial court did not err in granting summary judgment in favor of the City on appellants' nuisance claim.

The appellants argue that the City had a legal duty to "put up fencing and warning signs" because the pit was the result of surface mining and that the City's failure to do so was negligence per se. According to the appellants, both state and federal law requires the City to obtain a permit and erect barriers around such mining pits. The appellants cite to OCGA § 12-4-75, which sets forth the requirements for obtaining mining permits, but does not require either fencing or warning signs around mines. In further support of their argument, the appellants point to the deposition of their expert, who testified that he read "[v]arious rules and regulations" and spoke to certain public officials before determining that the law requires that mines be barricaded. However, the appellants cite no specific statute, rule, or regulation that imposes a duty to either warn of or barricade mines. And the expert's testimony that such rule exists is hearsay, which lacks probative value.[26] Accordingly, appellants' negligence per se argument fails.[27]

3. In view of our holding in Divisions 1 and 2, appellants' remaining arguments are rendered moot.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 27, 2002.

*Yearout, Myers & Traylor, W. P. Traylor III, Robert M. Margeson III*, for appellants.

*Alexander & Vann, William C. Sanders*, for appellee.

---

[25] See *McCall*, supra.

[26] See *Results Oriented v. Crawford*, 245 Ga. App. 432, 439 (1) (c) (538 SE2d 73) (2000).

[27] Moreover, under the definition of surface mining contained in OCGA § 12-4-72 (15), many man-made ponds could potentially come within such regulation. As the law clearly permits property owners to maintain ponds on their property without erecting fences or barricades, to impose a duty on the City under the guise of mining regulations would be the worst sort of bootstrapping.