A03A1829. WHITE et al. v. GEORGIA POWER COMPANY et al.
(595 SE2d 353)

MILLER, Judge.

This case presents a tragic set of circumstances in which two young boys made unwise decisions leading to their deaths. Recent, binding Georgia law, however, mandates that their mothers have no cause of action against these defendants.

Two nonswimmer boys (nine and twelve years old) tragically drowned in the Oconee River four miles downstream from the Sinclair Dam operated by Georgia Power Company. During the hours that the river was running deep and swift due to water flowing through the dam turbines to generate electricity, the nine-year-old descended a city boat ramp into the river until the water reached the base of his neck, whereupon he pushed off from the ramp more deeply into the river, resulting in the river's current sweeping him away; the twelve-year-old jumped in to rescue him and sank. Their mothers sued Georgia Power, its parent holding company (Southern Company), and the city that owned the boat ramp (Milledgeville), asserting claims of failure to warn and of maintaining a public nuisance. The trial court granted summary judgment to all defendants on the ground that the danger of drowning in the river was open and obvious to the nonswimmer boys as a matter of law. The mothers appeal. Recent Georgia law compels us to affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review the grant of sum-

mary judgment de novo, construing the evidence in favor of the non-movant. Id.

So construed, the evidence showed that for some hours beginning at 2:00 p.m. on July 9, 1999, Georgia Power released sufficient water through the turbines at Sinclair Dam so that the turbines were eventually operating at 70 to 75 percent capacity. As a result, the Oconee River gradually rose three feet in depth over the next several hours at a place four miles downstream where the City of Milledgeville owned a boat ramp open to the public. By 5:00 p.m., the river had crested and was receding.

About this time, an unsupervised group of eight boys (ages around nine to twelve, none of whom could swim) walked down the city boat ramp to the river to skip rocks. No warning signs were posted. The boys then removed their clothes and walked down the boat ramp into the water, with several getting into the water up to their waists. The boys could see that the water was high and that the current was carrying leaves, branches, and sticks downstream. One of the older boys pushed off the ramp and came back, acting like he was swimming.

Attempting to imitate this action, Aliud Muhammad (a nine-year-old) went farther down the ramp than all the other boys until the water was up to the base of his neck. The bottom of the river was not visible. Since Aliud could not swim, his mother had on a prior date warned him not to go into the deep end of a pool. Calling out "Look at me, I'm swimming," Aliud leaned backward and pushed off the ramp more deeply into the river, resulting in the river's current sweeping him away. As he cried for help, Saifuiddiyn Neal, a 12-year-old who also could not swim and who had also been warned by his mother not to enter deep water, courageously jumped into the river to rescue Aliud and sank. Tragically, both boys drowned. Previously, no person who had entered the river via the ramp had drowned.

Individually and as administratrixes of their sons' estates, the mothers of the two boys sued Georgia Power and its parent Southern Company as well as the city of Milledgeville. They asserted that the operation and maintenance of the dam and boat ramp without warning signs constituted a public nuisance and should be enjoined. They also sought to recover damages for defendants' alleged negligence in failing to warn of the dangers of the river, especially when the river was running swift and deep due to electricity generation. The trial court granted summary judgment to all defendants, reasoning that the dangers of the river were open and obvious to these nonswimmer boys. In their appeal of this order, the mothers argue that disputed issues of fact precluded summary judgment on the nuisance and negligence theories.

1. "[I]ssues of negligence and lack of ordinary care for one's own safety are rarely appropriate matters for summary adjudication." (Citation and punctuation omitted.) *Harmon v. City of College Park,* 218 Ga. App. 136, 137 (460 SE2d 554) (1995). Nonetheless, in certain instances, such as the present case, the trial court can conclude as a matter of law that plain, palpable, and undisputed evidence establishes that the decedents assumed the risk of their death (a complete defense). See id. As we stated less than ten years ago in *Harmon,* a "large body of rapidly moving water constitutes a clear and obvious dangerous condition," (punctuation omitted) id. at 137-138, and "[t]he danger of drowning in water is a palpable and manifest peril, the knowledge of which is chargeable to the decedent[s] in the absence of a showing of want of ordinary capacity." (Citation and punctuation omitted.) Id. at 137. The open and obvious nature of a danger obviates the duty to warn of that danger. *City of Winder v. Girone,* 265 Ga. 723, 724 (1) (462 SE2d 704) (1995).

The fear of water and of drowning is instinctively present in young children as a matter of law. *McCall v. McCallie,* 48 Ga. App. 99 (171 SE 843) (1933), first established this principle in 1933. In *McCall,* the plaintiff's nine-year-old son stepped into a deep hole in a pond on defendants' premises and drowned. Similar to the present case, the clear nature of the water danger (in *McCall* the depth of the water, here the strength of the current) was not easily discernible. Nevertheless, in *McCall* we affirmed the dismissal of the complaint (which alleged theories of nuisance and of failure to warn), holding: "The danger from fire or water is one that even young children may be said to apprehend. Although an owner of land may know of the habit of children to visit a pond on his premises and bathe, he is as a rule under no obligation to erect barriers or take other precautions to prevent them from being injured thereby. [Cit.]" Id. at 100 (1); see generally *Crawford v. Pollard,* 55 Ga. App. 702 (191 SE 162) (1937). Noting that the danger of drowning in a body of water "is an apparent, open danger, the knowledge of which is common to all, including a boy nine years of age . . . ," *McCall,* supra, 48 Ga. App. at 100 (3), we concluded: "Perils of deep water are instinctively known, and if it be insisted that this boy, nine years of age, did not possess such ordinary discretion as fairly to appreciate his danger, then it may be urged with propriety that he should not have been allowed to go in the vicinity of a body of water. [Cit.]" Id. at 101 (5); see *Laite v. Baxter,* 126 Ga. App. 743, 748 (2) (191 SE2d 531) (1972).

We recognize that "boys will be boys" and will often engage in unsafe behavior to their detriment, and that the application of this harsh doctrine to the present case denies their grieving mothers a cause of action to recover for their sons' tragic deaths — but it is the binding law of Georgia. Indeed, only a year ago we reaffirmed this

doctrine in *Spooner v. City of Camilla*, 256 Ga. App. 179 (568 SE2d 109) (2002), which opinion, as here, applied this principle to affirm summary judgment against the plaintiffs. In *Spooner*, a 13-year-old nonswimmer boy jumped into a water-filled mining pit owned by the local municipality and drowned. The child's guardian sued the city, alleging theories of failure to warn and of creating a public nuisance. Id. at 181 (2). We affirmed summary judgment in favor of the city, holding that under Georgia law, the inherent danger of water is generally understood even by very young children. Id. at 182 (2) (a); see *Stewart v. Harvard*, 239 Ga. App. 388, 392 (2) (520 SE2d 752) (1999); *Goodman v. City of Smyrna*, 230 Ga. App. 630, 632 (497 SE2d 372) (1998).

The guardian in *Spooner* suggested that because the body of water was not a natural pond but a man-made mining pit of unknown depth, a jury issue existed. Based on clear Georgia precedent, we were compelled to hold otherwise. "The fact that the water-filled pit resulted from an excavation does not obviate the fact that it was a body of water. The artificial character of the water hazard has no bearing on liability or nonliability. Moreover, the fact that such artificial pond has a deep hole or is muddy does not change the analysis." (Punctuation and footnotes omitted.) *Spooner*, supra, 256 Ga. App. at 182-183 (2) (a). As we stated in *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987), "[o]ne cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it." It is the body of water per se that presents an obvious risk of drowning, not its attendant conditions such as a strong unseen current or a deep unknown hole. Thus, this Court's binding precedent in *Spooner* reaffirmed only a year ago that Aliud here, who with the other boys saw the large river running high and its current moving leaves and branches, was presented with an obvious risk of drowning. His tragic and unwise decision to voluntarily enter the water up to his neck and then to push backward and more deeply into the river evokes deep feelings of sympathy, but it does not give rise to a cause of action against these defendants.

Accordingly, based on the binding precedent of *Spooner*, we are constrained to hold that Aliud assumed the known risk of drowning as a matter of law. Id. at 183 (2) (a). Stated differently, the defendants bore no duty to warn of an open and obvious danger. *Girone,* supra, 265 Ga. at 724 (1). Absent any negligence respecting Aliud's death, no liability attached for the death of his attempted rescuer, who also assumed the same obvious risk. See *Montega Corp. v. Grooms*, 128 Ga. App. 333, 339-340 (8) (c) (196 SE2d 459) (1973). As a matter of stare decisis, we have no choice but to affirm the trial

court's order entering summary judgment in favor of the defendants on the negligence count.

2. The trial court also correctly entered summary judgment against plaintiffs on the public nuisance count.[1] "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." OCGA § 41-1-2. This does not mean that the condition allegedly causing the nuisance must have actually hurt or injured everyone in the area, but it does mean that it must injure those of the public who actually come in contact with it. *City of Douglasville v. Queen*, 270 Ga. 770, 774 (4) (514 SE2d 195) (1999). The undisputed evidence showed that during the decades prior to these deaths, no other person had ever drowned when entering the river via the boat ramp, whether during power generation or otherwise. Indeed, the other six boys who accompanied Aliud and Saifuiddiyn into the water on the ramp that day were uninjured. "Inasmuch as a public nuisance must injure all members of the public who come into contact with it, the evidence to the contrary effectively erased [the mothers'] public nuisance cause of action." (Citations and punctuation omitted.) Id.; see *Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 728 (2) (548 SE2d 368) (2001). Moreover, the defendants were under no obligation to put up barricades or warning signs. *Spooner*, supra, 256 Ga. App. at 183-184 (2) (b). The trial court did not err in granting summary judgment in favor of the defendants on the mothers' nuisance claim. See id. at 184 (2) (b); see also *Crawford*, supra, 55 Ga. App. at 702.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED FEBRUARY 18, 2004 ▮▮▮▮▮▮▮▮

*George W. McGriff & Associates, George W. McGriff, Eric E. Wyatt, Bernard R. Thomas, Sr.*, for appellants.

*Jones, Cork & Miller, H. Jerome Strickland, Howard J. Strickland, Jr., Adams, Jordan & Treadwell, Virgil L. Adams, Donald J. Jordan*, for appellees.

---

[1] Plaintiffs assert a general public nuisance, not an attractive nuisance. "Georgia courts have long held that the attractive nuisance doctrine does not apply to ponds or other water hazards." (Punctuation and footnote omitted.) *Spooner*, supra, 256 Ga. App. at 183 (2) (b).