A06A0533. BRAZIER et al. v. PHOENIX GROUP MANAGEMENT et al.
(633 SE2d 354)

ELLINGTON, Judge.

This is a wrongful death case arising from the drowning of the decedent, Stephanie Brazier, after she rescued her 13-year-old son from a lake near their home. Arturo Brazier and Linda Brazier Francis[1] (collectively, "Brazier") appeal from the trial court's grant of summary judgment to Phoenix Group Management, G.P., and its partners, Alton Housworth, Jr., Bruce Mundy, Joseph R. Singleton, Gerald Sheppard, and Robert E. Talley (collectively, "Phoenix"). Brazier contends that summary judgment was improper because a jury question exists as to whether Phoenix, the developer of the property on which the lake was located, was negligent per se. He also argues that jury issues exist as to whether the decedent assumed the risk of drowning and whether her actions constituted contributory negligence. For the following reasons, we find summary judgment was proper and, therefore, affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004). So viewed, the record shows the following undisputed facts.

In 1996, Phoenix purchased several acres of property known as Southland Units 2 and 8 in Stone Mountain. A lake was located on part of the property; the lake had been there for at least 50 years, had been used for fishing, and had never been fenced.[2] Although the lake's water level varied when it collected storm water that drained off the surrounding properties, the lake always contained some water and never dried up. In October 1996, Phoenix entered into a sales contract

---

[1] Brazier filed the suit individually and in a representative capacity for the minor sons of the decedent. Francis is the administratrix of the decedent's estate.

[2] The parties disagree on whether the body of water should be referred to as a lake, a pond, a detention pond, a retention pond, or a detention facility. Because, as shown in Divisions 1 and 2, infra, Phoenix is entitled to judgment as a matter of law, regardless of the classification of the body of water, we will hereinafter refer to it exclusively as a lake.

with The Ryland Group ("Ryland") which provided that Phoenix would develop the property and subdivide it into individual lots. Ryland agreed to purchase the lots, upon which it planned to build homes for resale. During its development of the property, Phoenix repaired the lake's dam and constructed a spillway from the lake to allow excess water to drain off. DeKalb County officials approved Phoenix's construction plans, repeatedly inspected the construction during development, and concluded that the county's ordinances did not require a fence around the lake. After Phoenix subdivided the property, it filed a final plat with the county which showed that the property lines of the lots adjacent to the lake divided the lake among those lots. The final plat also contained a note that the "Lake and detention pond [are] to be owned & maintained by [the subdivision's] Homeowners Association." Two county officials certified that Phoenix had developed the property in compliance with the approved construction plans and with "DeKalb County Specifications and Standards."

Prior to the date of the decedent's drowning, May 21, 2000, Phoenix sold the lots to Ryland pursuant to their agreement; Ryland built homes on some of the lots and sold them to individual buyers. In May 2000, however, Ryland still held title to one lot on which a portion of the lake was located. There is no evidence that, on the date of the drowning, Phoenix owned or occupied the lake or any property surrounding the lake. In fact, Brazier has admitted that he does not have any deeds, contracts, or other documents to show that Phoenix "owned, operated, controlled, maintained, managed or held a possessory interest" in the lake or the surrounding property on May 21, 2000.[3]

The undisputed evidence further shows that, at the time of her death, the decedent had two children, a thirteen-year-old son and an eleven-year-old son. Although the 13-year-old boy was autistic and did not speak, he was not physically impaired and did not take any medication. He attended special classes at the local middle school. The family lived in a house that was adjacent to the subdivision, and they could see the lake from their backyard. The decedent knew that the lake was not surrounded by a fence and had told both of her sons that they were not allowed to go to the lake. There is no evidence that, prior to the decedent's drowning, either of the boys had ever been to

---

[3] In his responses to interrogatories, however, Brazier contended that Phoenix had an obligation to maintain the lake because Phoenix allegedly made a "possible improper attempt to assign responsibility to maintain and control the [lake] to another entity at the time of filing its land plat and plans." But Brazier did not allege fraud in his complaint, nor did he address this allegation in his brief on appeal. Consequently, this allegation is deemed abandoned. Court of Appeals Rule 25 (c) (2).

the lake. The evidence showed, however, that the decedent frequently took her sons to a swimming pool, a local water park, and the beach. The 13-year-old boy also took swimming lessons at school, although it is unclear whether he knew how to swim.

On May 21, 2000, while the decedent was working on her computer, the 13-year-old boy went outside without her knowledge. When the decedent realized that the boy was gone, she and her younger son began to search for him. Shortly thereafter, the decedent saw the older boy standing in the lake and heard him yelling. There is no evidence that anyone gave the boy permission to go onto the property surrounding the lake or to go into the lake, and Brazier does not dispute that the boy was a trespasser.

The decedent went into the lake to get her son and pushed the boy to safety. The decedent, however, could not get out of the lake, so she sent her younger son to get help. The younger boy took his older brother home before seeking help from a nearby homeowner. By the time rescuers arrived, the decedent had drowned and could not be revived.

Brazier filed suit against Phoenix, Ryland, the subdivision's homeowners' association, the owners of the homes surrounding the lake, and other defendants.[4] The original complaint was based upon ordinary negligence, but Brazier later amended his complaint to include a negligence per se claim against Phoenix, contending that Phoenix violated a county ordinance when it failed to erect and maintain a fence around the lake.[5] The parties filed cross-motions for summary judgment.

In support of his motion for summary judgment on the issue of negligence per se, Brazier presented the affidavit and deposition testimony of an expert witness, Seymour Liebmann. Liebmann made measurements around the lake and the surrounding property in February 2004 which showed that the depth of the lake exceeded four feet and the slope of the banks was steeper than the maximum

---

[4] Brazier subsequently settled his claims against all of the defendants except Phoenix and its partners.

[5] According to Brazier, the DeKalb County Code required fencing around the lake in this case because the lake temporarily stored storm water runoff from the surrounding property and, therefore, was a storm water "detention facility" as defined by the Code. See Code of DeKalb County, Ch. 14, Art. II, Sec. 14-26 (defining "detention facility"). Brazier relied upon a county ordinance that applies to the "installation, development and maintenance of all detention and sedimentation control facilities designed for temporary storage of stormwater runoff." Code of DeKalb County, Ch. 14, Art. II, Sec. 14-40 (b) (8) (a). This ordinance requires a four-foot fence around such facilities when they have a "maximum water on undercut depth of more than four (4) feet or a bank slope greater than one and one-half (1) horizontal to one (1) vertical."

allowable ratio of one-and-one-half horizontal to one vertical. Lieb-mann opined that these measurements had not substantially changed since 1997 and, therefore, the DeKalb County Code required a four-foot fence around the lake on the date the decedent drowned in 2000.

In its motion for summary judgment, Phoenix argued that the Code did not require a fence around the lake. Phoenix presented the testimony of three current or former DeKalb County officials who had inspected and approved the construction of the subdivision, approved the final plats that had been filed with the county, and certified that the development complied with the Code. All three officials testified that the Code did not require a fence around the lake. Phoenix also argued that it was not liable because there was no evidence that it owned or occupied the lake or the surrounding property at the time of the decedent's death. In addition, Phoenix contended that the decedent and her son were trespassers (or, at most, licensees), to whom it could only be liable for wilful or wanton conduct, and that the lake was an open and obvious condition of which both the decedent and her son had actual knowledge. The trial court granted Phoenix's motion for summary judgment, and Brazier appeals.

1. Brazier contends that the trial court erred in granting summary judgment to Phoenix because jury issues existed on whether the county ordinance required that the lake have a fence around it and whether Phoenix was negligent per se for failing to erect a fence during its development of the property.[6] Pretermitting whether the ordinance required a fence around the lake, however, we agree with the trial court's conclusion that Phoenix was entitled to summary judgment in this case.

(a) In order to demonstrate negligence per se based upon the defendant's violation of a county ordinance, the plaintiff must show that the victim fell within the class of persons the ordinance was intended to protect and that the injury complained of was the type of harm the ordinance was intended to prevent. *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 350 (3) (568 SE2d 559) (2002). A showing of negligence per se, however, does not establish liability per se. *Florence v. Knight*, 217 Ga. App. 799, 800 (459 SE2d 436) (1995). "Breach of duty alone does not make a defendant liable in negligence. The rule remains that the true ground of liability is the *superior* knowledge of the [property owner or occupier] of the existence of a condition that may subject the invitee to an unreasonable risk of

---

[6] We note that, although Brazier's original complaint asserted a claim for ordinary negligence, Brazier later expressly abandoned such claim in the court below, relying instead on his allegation of negligence per se. Brazier makes no argument regarding ordinary negligence in this appeal.

harm." (Citation, punctuation and footnote omitted; emphasis in original.) *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843, 845 (575 SE2d 732) (2002). Therefore, even if Brazier could show that the ordinance applied to the lake in this case and that Phoenix was negligent per se for failing to erect a fence around the lake, he would still be unable to recover if the undisputed evidence showed that the lake was an open and obvious hazard of which the decedent and her 13-year-old son had equal knowledge. See *Trulove v. Jones*, 271 Ga. App. 681, 682 (2) (610 SE2d 649) (2005) (even if a property owner was negligent per se based upon the violation of a building code, the injured licensee could not recover because she had equal knowledge of the dangerous condition); *Yasinsac v. Colonial Oil Properties*, 246 Ga. App. 484, 486 (3) (541 SE2d 109) (2000) (accord); *Florence v. Knight*, 217 Ga. App. at 800 (accord).

This Court has repeatedly recognized that lakes, ponds, and similar bodies of water, either natural or manmade, are open and obvious hazards, even to small children. *White v. Ga. Power Co.*, 265 Ga. App. at 666-668 (1); *McCall v. McCallie*, 48 Ga. App. 99, 99-101 (171 SE 843) (1933); see also *Spooner v. City of Camilla*, 256 Ga. App. 179, 183 (2) (b) (568 SE2d 109) (2002) (as a general rule, landowners are not required to erect barriers around ponds or other water hazards in order to prevent children from entering). "[T]he danger of drowning in water is a palpable and manifest peril, . . . [and t]he fear of water and of drowning is instinctively present in young children as a matter of law." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. at 666 (1) (applying this rule to nine- and twelve-year-old children). See *Bowers v. Grizzle*, 214 Ga. App. 718, 720 (4) (448 SE2d 759) (1994) (physical precedent only) (finding as a matter of law that a thirty-two-month-old child had a natural fear of water); *McCall v. McCallie*, 48 Ga. App. at 100 (finding as a matter of law that the danger of drowning in a pond or lake is an open and obvious danger that is known by all, including the nine-year-old child who drowned in a pond); see also *Spooner v. City of Camilla*, 256 Ga. App. at 182-183 (2) (a) (finding as a matter of fact that a thirteen-year-old boy understood the inherent danger of a body of water, even though there was some evidence that he was "slow" in school). It follows that, because a lake or pond is an open and obvious hazard, it is not a mantrap or an attractive nuisance and does not expose either a licensee or a trespasser to an unreasonable risk of harm. *Adams v. Atlanta Faith Mem. Church*, 191 Ga. App. 215, 216 (381 SE2d 397) (1989); *Wren v. Harrison*, 165 Ga. App. 847, 848 (303 SE2d 67) (1983); *Montega Corp. v. Grooms*, 128 Ga. App. 333, 336-338 (3), (4), (7) (196 SE2d 459) (1973); *Fickling v. City Council of Augusta*, 110 Ga. App. 330, 332 (138 SE2d 437) (1964).

In this case, the undisputed evidence showed that the decedent and her sons could see the lake from their backyard, and it was obvious that there was no fence around the lake. In fact, there is no evidence of a fence or other obstacle between the family's back door and the lake that would have prevented the children from reaching the lake. The decedent and her sons were clearly aware that the lake was a potential hazard, because the decedent had specifically warned both of the boys not to go to the lake. Although the 13-year-old boy was autistic, there was no evidence that he was mentally impaired to the extent that he could not follow directions or recognize hazards that, as a matter of law, would be appreciated by much younger children. The evidence also showed that the 13-year-old boy took swimming lessons at school and was familiar with large bodies of water, because his mother had repeatedly taken him to swimming pools, to a water park, and to the beach. Under the circumstances, the evidence presented demands a finding that the lake was an open and obvious hazard of which the decedent and her sons had actual knowledge. Therefore, Brazier's negligence per se claim must fail as a matter of law, and the trial court properly granted Phoenix summary judgment. *Trulove v. Jones*, 271 Ga. App. at 682 (2); *Florence v. Knight*, 217 Ga. App. at 800.

(b) Brazier contends that the decedent drowned while rescuing her son and, therefore, her knowledge of the hazardous nature of the lake does not relieve Phoenix of liability for her drowning. In order to hold a defendant liable for the death of a rescuer, however, a plaintiff must show that the defendant's negligence placed himself or another person in imminent distress, thereby requiring the rescue and making injury to the rescuer a foreseeable possibility. *Montega Corp. v. Grooms*, 128 Ga. App. at 339-340 (8) (c). As shown in subdivision (a), supra, Phoenix was not responsible for placing the decedent's son in his perilous situation because, as a matter of law, the boy had equal knowledge of the potential danger of the lake before the day of the drowning. Therefore, it follows that Phoenix is not liable for the drowning of the boy's rescuer, the decedent, as a matter of law. See *White v. Ga. Power Co.*, 265 Ga. App. at 667-668 (1) (a dam operator was not liable for the death of a twelve-year-old boy who drowned in a river while trying to rescue his nine-year-old friend downstream from the dam); *Montega Corp. v. Grooms*, 128 Ga. App. at 338-340 (8) (a property owner was not liable for death of twelve-year-old boy who drowned while trying to rescue his four-year-old sister from an excavation pit that had filled with water); cf. *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620, 624 (139 SE2d 496) (1964) (the negligence of the defendants' employees in the scope of their duties created an urgent and imminent danger that threatened to cause serious injury to the employees, so it was reasonably foreseeable that someone

would attempt to rescue them; because the employees' negligence was the proximate cause of the injuries to the employees and their rescuers, the employer was liable for those injuries).

2. Recognizing that this result may appear to be harsh given the tragic facts of this case, we point out that there is a separate and independent basis upon which to find that Phoenix was entitled to summary judgment.

The undisputed evidence in this case shows that Phoenix did not own or occupy the lake or any of the surrounding property on the date of the decedent's drowning.[7] Even if Phoenix had some interest in the property that would expose it to liability for negligent construction, however, it is undisputed that the 13-year-old boy was a trespasser when he walked onto the property and entered the lake. See *Montega Corp. v. Grooms*, 128 Ga. App. at 335 (1) ("One's status as a trespasser, licensee or invitee is not determined by his age or his capacity, mental or physical.") (citations omitted). When the decedent later entered the lake to rescue her son, she became, at most, a licensee. Id. It is well established that an owner or occupier of property owes no duty to trespassers or licensees, even when they are small children, other than to refrain from wilfully or wantonly injuring them. OCGA § 51-3-2; *Trulove v. Jones*, 271 Ga. App. at 681-682 (1); *Oliver v. City of Atlanta*, 147 Ga. App. 790, 792 (2) (250 SE2d 519) (1978); *Montega Corp. v. Grooms*, 128 Ga. App. at 335-341 (1)-(10); *Rawlins v. Pickren*, 45 Ga. App. 261 (164 SE 223) (1932) (noting that the owner's duty to trespassers does not change, no matter how "innocent or laudable [the trespassers'] purpose may be" for entering the property) (citations and punctuation omitted).

In this case, there is no evidence in the record to support a finding that Phoenix acted in a wilful or wanton manner toward either the decedent or her son. Brazier's only allegation of a negligent act by Phoenix is the company's failure to comply with the county ordinance requiring a fence around the lake. The undisputed evidence showed, however, that county officials approved Phoenix's development plans for the property, repeatedly inspected the property during construction, and certified that Phoenix had complied with the county Code. The officials concluded that the lake did not require a fence and,

---

[7] Generally, once a property developer or home builder has sold property to another, it is not liable for damages resulting from negligent construction that could have been discovered through reasonable inspection, even if the negligent construction violated building codes, unless the developer or builder fraudulently concealed the negligence. See *Florence v. Knight*, 217 Ga. App. at 800 (a home builder was not liable for damages resulting from negligent construction defects which were discoverable upon reasonable inspection by the home buyer). As shown in Division 1 (a), supra, it is undisputed that the allegedly negligent construction in the case, Phoenix's failure to erect a fence, was an open and obvious condition, not a hidden defect or one that was fraudulently concealed.

therefore, never asked Phoenix to erect a fence. County officials also approved and accepted the final plats for filing, even though the plats did not show a fence around the lake.

Under these circumstances, even if Brazier could show at trial that the Code required a fence around the lake, we find as a matter of law that Phoenix's failure to erect a fence during development of the property was not a wilful or wanton act which was so reckless or indifferent to the consequences that it would make the company liable for the decedent's death. *Trulove v. Jones*, 271 Ga. App. at 681-682 (1) (describing "wanton conduct" as "that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent to do harm or inflict injury") (citation and punctuation omitted); see also *Bowers v. Grizzle*, 214 Ga. App. at 720 (4) (physical precedent only) (the property owner's failure to close an opening in the fence around a pool did not constitute a wilful or wanton act that would make them liable for the death of a 32-month-old child who drowned in their pool while visiting their home). Accordingly, Brazier's claim must fail.

3. Brazier contends that he was entitled to summary judgment on the issue of whether the decedent was contributorily negligent in failing to adequately supervise her 13-year-old son. Given our rulings in Divisions 1 and 2, supra, however, this issue is moot.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JUNE 2, 2006 —
RECONSIDERATION DENIED JUNE 22, 2006 —

*Goldstein & Hayes, James A. Goldstein, Benjamin M. Byrd,* for appellants.

*Talley, French & Kendall, Laura French, Michael C. Kendall, Weissman, Nowack, Curry & Wilco, Derek W. Johanson,* for appellees.