A08A0434. RICE et al. v. OAKS INVESTORS II et al.
(666 SE2d 63)

SMITH, Presiding Judge.

This is a tragic case involving the drowning of a ten-year-old girl in an apartment complex swimming pool. The parents of the deceased girl filed a wrongful death complaint against both the owner and the manager of the apartment complex. At the close of the evidence presented at trial, the court granted the defendants' motion for directed verdict. The plaintiffs appeal, asserting essentially three claims of error. Because the controlling case law is well established and it is clear that the trial court properly granted the motion for directed verdict, we affirm.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Stedman v. Cotton States Ins. Co.*, 254 Ga. App. 325 (562 SE2d 256) (2002). We conduct a de novo review of the evidence and will uphold the grant of a directed verdict only if all the evidence demands it. Id.

So viewed, the evidence showed that the deceased, her nine-year-old sister, and a cousin, were visiting their aunt at an apartment complex.[1] The aunt told the girls that they could play outside.[2] The

---

[6] *Sumner v. State*, 284 Ga. App. 308, 312 (1) (643 SE2d 831) (2007).

[1] A second cousin was also visiting, but did not leave the apartment.

[2] One of the girls testified that the aunt gave them permission to go swimming in the complex swimming pool, but the aunt could not recall giving them permission.

girls left the apartment and went to the pool where they noticed that the entrance gate was locked. The pool, surrounded by a four-foot tall fence, had been closed due to a low pH level. There was a sign posted next to the gate stating that "all children and non-swimmers must be accompanied by a parent or responsible adult supervisor." There was no lifeguard at the pool. The water was clear, and there were no defects in the pool. The girls saw a man mowing the lawn nearby and asked him if they could swim. The man, who said he "worked there," told them that they could enter through a hole in the side of the fence.

The girls entered the pool and swam until it started raining and they were told by a resident to get out of the water. When the rain stopped, the girls returned. The decedent then walked to the life-line in the center of the pool that divided the shallow water from the deep and held onto the rope. Her sister stated that she saw the decedent reach for the rope once, but that she could not reach it a second time and sank to the bottom of the pool.

Paramedics were called, but the ten-year-old later died at a local hospital. The decedent knew how to swim and had been told by her mother on other occasions never to swim without an adult present and never to swim in the deep end of the pool.

The plaintiffs argued at trial that the defendants were negligent per se for violating two sections of the College Park Swimming Pool Code. One section provided that all public swimming pools shall be enclosed by a fence at least four feet high, and that openings in the fence shall "not permit the passage of a 4-inch diameter sphere." A second section provided that it shall be unlawful for any property owner or tenant to be "absent from the premises" (meaning no responsible adult living on or about the premises) for more than 30 days.[3]

1. In two enumerations, the plaintiffs contend that the trial court erred in granting the defendants' motion for directed verdict. The defendants conceded that the fence was not properly maintained because it had a large opening on one side. But it is well settled that negligence per se is not liability per se and that a plaintiff must still prove proximate cause. See *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67, 70-71 (1) (a) (633 SE2d 354) (2006); *Holbrook v. Executive Conference Center*, 219 Ga. App. 104, 107 (2) (464 SE2d 398) (1995). And our courts have repeatedly held that "[t]he danger of drowning in water is a palpable and manifest peril, and the fear of water and of drowning is instinctively present in young children as a matter of

---

[3] The court ruled that clearly there were tenants on the property and that therefore this section of the city code was not violated.

law." (Citations and punctuation omitted.) *Brazier*, supra, 280 Ga. App. at 71 (1) (a).

> [T]here is no legal bar to applying assumption of the risk, as a matter of law, to the conduct of a child between the[ ] ages [of seven and fourteen] when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk.

(Citation, punctuation and footnote omitted.) *Spooner v. City of Camilla*, 256 Ga. App. 179, 182 (2) (a) (568 SE2d 109) (2002).

The death of a child evokes both sadness and sympathy. But as tragic as this event was, the deceased was capable of appreciating the risk associated with swimming in the pool. See *Sayed v. Azizullah*, 238 Ga. App. 642, 644 (519 SE2d 732) (1999). We have held under similar circumstances that the child's "own negligence is the sole proximate cause" of his or her drowning. Id. Moreover, in this case, the deceased's mother explicitly instructed the child to stay out of the deep end of a pool and never to swim without adult supervision. The trial court therefore did not err in granting the defendants' motion for directed verdict as there was no conflict in the evidence as to any material issue and the evidence demanded a defense verdict. See, e.g., *Spooner*, supra, 256 Ga. App. at 181-183 (2) (a) (13-year-old assumed the risk of jumping into a pool of water as a matter of law); *Sayed*, supra, 238 Ga. App. at 644-645 (breach of a duty to supervise not the cause of 17-year-old's death where decedent knew and appreciated risk of drowning in lake); *McCall v. McCallie*, 48 Ga. App. 99 (171 SE 843) (1933) (danger of drowning in swimming pool is apparent and open danger to nine-year-old boy).

2. In two related enumerations, the plaintiffs argue that the trial court erred in denying their motion for directed verdict on their negligence per se claims. Because we have held in Division 1 that the court properly granted the defendants' motion for directed verdict, the plaintiffs' arguments here are moot.

3. In their two remaining enumerations, the plaintiffs contend that the trial court erred in withdrawing from evidence the Clayton County Health Department's swimming pool regulations. The trial court withdrew the regulations on the ground that the Georgia Supreme Court has held that boards of health cannot adopt swimming pool regulations. In *Vinson v. Home Builders Assn. of Atlanta*, 233 Ga. 948 (213 SE2d 890) (1975), the Georgia Supreme Court held that under what is now OCGA § 31-3-4 (a) (3), a county board of health is empowered to only "[t]ake such steps as may be necessary to prevent and suppress disease and conditions deleterious to

health" and that the legislature did not grant power to boards of health "to adopt and enforce rules and regulations which require attendants, lifeguards, safety equipment, gates and fences at swimming pools of apartments" or any other matters related to public safety. (Punctuation omitted.) Id. at 948-949. The trial court therefore did not err in removing from the evidence the health department regulations.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JUNE 26, 2008 —
RECONSIDERATION DENIED JULY 11, 2008 — 

*Michael B. King*, for appellants.

*Dennis, Corry, Porter & Smith, Grant B. Smith, Michael W. Horst*, for appellees.