## A03A2542. LUTHER et al. v. WAYNE FRIER HOME CENTER OF TIFTON, INC.
### (592 SE2d 470)

ANDREWS, Presiding Judge.

Randall M. Luther and his wife, Shirley F. Luther, appeal from the trial court's grant of summary judgment to Wayne Frier Home Center of Tifton, Inc. (Home Center) in their suit arising from the attempted removal of their trade-in mobile home and the resulting fire which destroyed it.

As the movant for summary judgment, Home Center had to " 'demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warranted judgment as a matter of law.' " *Talbot County Bd. of Commrs. v. Woodall*, 275 Ga. 281 (565 SE2d 465) (2002), quoting *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the evidence was that, in May 1998, Randall Luther went to the Tifton sales lot of Home Center and purchased a 1998 Redman-Advantage mobile home. Kirkpatrick, the general manager of Home Center, explained the company procedure regarding sales. When the contract price included setup and delivery, as did the Luthers' contract, Home Center would contact one of several setup and moving contractors in the area and hire them as a subcontractor by the job, paying a set fee per job. Benny Goddard and his brother Jimmy were among the subcontractors Home Center had used repeatedly with good results.[1] Jimmy Goddard was hired to remove the Luthers' trade-in home from the Luthers' lot and take it to the Home Center lot after setting up the Luthers' new mobile home. When double-wide homes are involved, as here, the subcontractor first breaks the trade-in into two halves, moves one half to the side, and then sets one half of the new home. This is done in order to allow the purchaser to easily move the trailer's contents from the old to the new home. The trade-in cannot be removed from the purchaser's premises until this has been accomplished and the purchaser has so notified Home Center.

In the Luthers' situation, Jimmy Goddard and his crew, including David Tawzer, a welder hired by Goddard, went to the Luthers' home to begin the removal process. Tawzer, under the supervision of Jimmy Goddard, was attempting to weld removal devices to the trade-in when it caught fire and was destroyed. There is no further evidence regarding the cause of the fire or what initially ignited.

---

[1] Benny Goddard had a license to transport mobile homes, while his brother Jimmy did not. Jimmy Goddard worked under his brother's license.

The Luthers sued Home Center, Jimmy and Benny Goddard d/b/a Goddard Mobile Home Transport Service, and Tawzer, claiming that Home Center breached its contract regarding the setup and removal, and negligently performed the attempted removal.

1. The Luthers' first two enumerations are that the trial court erred in granting Home Center's motion for summary judgment on their negligence claim because material questions of fact remain regarding Home Center's own negligence and whether it had a non-delegable duty regarding intrinsically dangerous work. They are considered together.

Home Center's motion was premised on the fact that Home Center retained Goddard, an independent contractor, to break down the trade-in, set up the new mobile home, and bring the trade-in to Home Center's lot. Home Center, through affidavits and deposition testimony of its then general manager, showed that it in no way retained control over the time, manner, or method of Goddard's doing these tasks and that, in fact, Goddard then retained Tawzer, another independent contractor, to perform the welding of pieces onto the trade-in, thereby entitling Home Center to summary judgment on the Luthers' negligence claim. OCGA § 51-2-4; *Williamson v. Coastal Physician Svcs. &c.*, 251 Ga. App. 667, 668 (554 SE2d 739) (2001).

The Luthers argued that welding was an inherently dangerous activity for which Home Center remained responsible under the exception of OCGA § 51-2-5 (2), which provides that the employer remains liable for negligence of a contractor if, "according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed." See *Rice v. Delta Air Lines*, 217 Ga. App. 452, 454 (2) (b) (458 SE2d 359) (1995). Where the work is not inherently dangerous except as a result of the negligence of the contractor, the employer is not liable. *Jacobs v. Thomson Oak Flooring*, 250 Ga. App. 56, 60 (4) (550 SE2d 465) (2001) (hauling logging equipment is not inherently dangerous); *St. Paul Cos. v. Capitol Office Supply Co.*, 158 Ga. App. 748, 749 (282 SE2d 205) (1981). See also *Ga. Power Co. v. Gillespie*, 49 Ga. App. 788, 793 (176 SE 786) (1934) (while electricity is a dangerous force, there is a safe and standard practice for handling it which if followed does not result in harm).

The Luthers, however, acknowledge that there is no Georgia authority, and we have found none, that welding is such an inherently dangerous activity. The only evidence in the record here is that welding could be part of the removal process for the trade-in trailer and that welding involved flame, which Home Center knew. There is no evidence to show that welding, per se, is intrinsically dangerous,

and we are persuaded by authority from other jurisdictions which have considered the issue that it should not be. As found there,

> [t]he use of a cutting torch is an activity which, if carried on properly and by competent and careful operators, is not in itself inherently dangerous. It does not pose the risk and danger to others or others' property when properly conducted as does the use of explosives, corrosives or other similarly inherently dangerous activities and products.

*Woodward v. Mettille,* 81 Ill. App.3d 168, 176 (400 NE2d 934) (1980). Compare *Kubisz v. Cadillac Gage Textron,* 236 Mich. App. 629, 635 (II) (B) (601 NW2d 160) (1999) (expert testimony that welding on containers that previously held diesel fuel created special danger inherent to the very nature of the task), with *Waterway Terminals Co. v. P. S. Lord Mechanical Contractors,* 242 Ore. 1, 60-61 (406 P2d 556) (1965) (welding on construction project could have been safely done).

There was no error in the trial court's grant of summary judgment to Home Center on the negligence claim.

2. The Luthers also contend that the trial court erred in granting Home Center's motion for summary judgment on their breach of contract claim. Count 2 of their complaint alleges breach of contract in the removal of the trade-in and seeks as damages "the loss of their [trade-in] mobile home and the contents therein. . . ."

As to the trade-in, the Luthers received the insurance proceeds from the fire and Home Center, as a result of the trade-in, received the burned-out mobile home. The contract makes no reference to the contents of the trade-in mobile home, and therefore, damages from any breach of the contract, if such a breach were proven, would not include compensation for the lost contents.

Further, the contract on its face does not in any way restrict Home Center's right to subcontract the breakdown and removal of the trade-in, as argued by the Luthers, and Home Center is therefore not liable if this were done negligently. See *PYA/Monarch, Inc. v. Higley,* 219 Ga. App. 199, 201 (2) (464 SE2d 630) (1995); *Fields v. B & B Pipeline Co.,* 147 Ga. App. 875 (250 SE2d 582) (1978).

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED DECEMBER 17, 2003.

*Carter & Richbourg, Render M. Heard, Jr.,* for appellants.
*John T. Croley, Jr.,* for appellee.