A03A1808. GARNER et al. v. RITE AID OF GEORGIA, INC.
(595 SE2d 582)

MIKELL, Judge.

The parents of a seventeen-year-old who died from inhaling or "huffing" butane and the parents of two other minors sued Rite Aid of Georgia, Inc. ("Rite Aid"), the seller of the product. They alleged that by selling the butane to minors, Rite Aid failed to exercise ordinary care. Finding that the three teenagers who inhaled the butane had knowingly assumed the risk of injury, the trial court granted summary judgment to Rite Aid. Appellants contend that the record contains evidence that requires a jury to decide whether the teens assumed the risk of injury. We disagree and affirm.

In reviewing a trial court's ruling on summary judgment, this Court conducts a de novo review of the evidence.[1] To prevail at summary judgment, the moving party must demonstrate that no genuine issue of material fact remains for resolution and that the undisputed facts, when viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2] Viewed in this light, the evidence shows that on July 26, 2000, 17-year-old Tristan Garner gave 15-year-old Robert Lee Blasingame, II, some money and told him to "go down to Rite Aid and get some butane." Blasingame then bought a can of butane from a Rite Aid store. Garner had previously told

---

[1] *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).
[2] *DeKalb County School Dist. v. Allen*, 254 Ga. App. 66 (561 SE2d 202) (2002).

Blasingame that huffing butane "gets you high and makes you light-headed." The day before, Blasingame and Garner had each inhaled a can of butane purchased from Rite Aid.

At approximately 8:15 p.m., Blasingame and Garner started inhaling the butane. A mutual friend, John Heenan, took the can of butane away from Garner, saying, "man, you need to quit," but Garner grabbed it back. Casey Tyree, then age 13, recalled that both Heenan and Amanda Holt, a 15-year-old friend, kept telling Garner and Blasingame to quit. As Garner and Blasingame continued huffing butane, Tyree decided to partake too. Garner suddenly developed difficulty breathing and collapsed without regaining consciousness.

Blasingame admitted that both Garner and Heenan had told him that huffing butane could hurt or kill him. Blasingame also testified that he and his friends had discussed the danger among themselves before huffing the butane. Blasingame was aware that butane is flammable and used to refill cigarette lighters. He conceded that he did not read the warning label on the can.[3]

Similarly, Tyree admitted that she knew about the dangers of inhaling butane and testified that she had heard that "it could freeze your lungs" and that "it could kill you." She admitted knowing about these risks before that tragic night. Like Garner and Blasingame, Tyree had also inhaled butane the day before. Tyree recalled that when she inhaled butane, she would get high for about two minutes then get a headache. She also knew that butane is flammable and has the same chemical properties as gasoline. Like Blasingame, she did not pay attention to any warning that appeared on the can. Despite the warnings from her friends, Tyree chose to inhale the substance, even though by her own admission she knew that it was dangerous to do so.

This case appears to be one of first impression in Georgia where the parents of teenagers, who engaged in volatile substance abuse, sued the retail seller of an otherwise lawful product that was deliberately misused. John Garner and Deborah Garner, the parents of Tristan Garner, brought a wrongful death action, and Vicki Tyree and Robert Blasingame, the parents of the other two minors, brought claims for personal injuries against Rite Aid. The parents primarily

---

[3] Rite Aid asserts that the label on the can of butane advised: "WARNING: USE ONLY AS DIRECTED. INTENTIONAL MISUSE BY DELIBERATELY CONCENTRATING AND INHALING THE CONTENTS CAN BE HARMFUL OR FATAL." Although a similar can was shown to the trial court at the hearing, no can was sent to this court in the appellate record. The parties dispute whether the label warned not to sell to minors. Rite Aid's store manager at the time of the incident testified that he did not recall seeing warnings to "keep out of reach of children" and "do not distribute to minors."

alleged that Rite Aid was negligent "in allowing the purchase of butane by said minors," and by failing to prevent the purchase despite having "actual knowledge that the butane purchased was being misused."

Contending that the teens assumed the risk of injury, Rite Aid sought summary judgment. Rite Aid argued that when a plaintiff consents to and assumes a known risk, under our law, "a plaintiff cannot profit from his own bad choices." Rite Aid claimed that by voluntarily huffing a substance that they knew could result in death, the minors assumed the risk of injury and were barred from recovering damages.

In granting Rite Aid's motion, the trial court found that the minors "voluntarily chose to inhale a product that they knew to be dangerous to their health and even fatal. Any legal duty Defendant might have owed the minor Plaintiffs was nullified by the Plaintiffs' decision to voluntarily inhale the butane, as each was fully aware of the potential dangers in doing so."

In their sole enumeration of error, the parents contend that a jury should decide whether the defense of assumption of the risk applies. They argue that "Tristan, Lee, and Casey had a generalized concern of danger of inhaling butane, but none of them had a specific knowledge of what it was about butane that could severely harm them." They claim that the teens' "generalized knowledge about a possible danger only heightened the thrill of huffing." Citing the affidavit of Dr. Jonathan Lauter, the parents urge that a jury should decide whether, in fact, their children assumed the risk of injury. They also assert that the trial court usurped the role of a jury by weighing the evidence against them and by determining the credibility of witnesses.

The affirmative defense of assumption of the risk precludes recovery when it is established that a plaintiff, "without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[4] In asserting a defense of assumption of the risk, a defendant must establish that "the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[5] The standard in assessing the defense of assumption of the risk is "a subjective one, geared to the particular plaintiff and his situation," rather than an objective standard geared to the reasonable

---

[4] (Punctuation and footnote omitted.) *Muldovan v. McEachern*, 271 Ga. 805, 807 (2) (523 SE2d 566) (1999).

[5] (Footnote omitted.) Id. at 807-808.

person of ordinary prudence as applied in determining contributory negligence, a completely separate defense.[6]

> Knowledge of the risk is the watchword of assumption of [the] risk, and means both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.[7]

Even though assumption of the risk generally is a jury issue, in plain and palpable cases, the issue may be decided as a matter of law, even if the case involves a child under the age of 14.[8] As to a child between the ages of seven and fourteen, "there is no [legal] bar to applying assumption of the risk, as a matter of law, to [that child's] conduct . . . when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk."[9] On the other hand, a child "of fourteen years of age is presumptively chargeable with the same standard of diligence for his own safety as an adult."[10]

Applying these principles to the facts of this case, we find that the evidence shows clearly that each teen had actual and subjective knowledge of the dangers of huffing or inhaling butane. Blasingame and Tyree acknowledged that two of their friends repeatedly told them "you all need to quit," and tried to get them to stop inhaling the butane. Blasingame admitted that Garner had warned him that huffing could hurt or kill him and Tyree admitted knowing "it could kill you."

The parents submitted the affidavit of Dr. Lauter, a board-certified child and adolescent psychiatrist. Dr. Lauter, who never met with or interviewed any of the three teens, testified that due to many factors, including social circumstances, education, and peer pressure, adolescents often exercise poor judgment. He testified, "[i]n the situation of a person being irresponsible, free will is like handing a loaded gun to a four year old child." In Dr. Lauter's opinion, due to the cir-

---

[6] (Citation and punctuation omitted.) *Williams v. Mitchell County Elec. Membership Corp.*, 255 Ga. App. 668, 671 (566 SE2d 356) (2002).

[7] (Punctuation, footnotes and emphasis omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

[8] *Spooner v. City of Camilla*, 256 Ga. App. 179, 181-182 (2) (a) (568 SE2d 109) (2002).

[9] (Citations omitted.) *Goodman v. City of Smyrna*, 230 Ga. App. 630, 632 (497 SE2d 372) (1998). See also *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, 466 (314 SE2d 444) (1984) (11-year-old injured on "Corkscrew" flume ride assumed the risk of injury).

[10] (Citation omitted.) *Sayed v. Azizullah*, 238 Ga. App. 642, 644 (519 SE2d 732) (1999).

cumstances surrounding the huffing of the butane and given the backgrounds of the three minors involved, they were incapable of fully appreciating the risks of huffing butane. Dr. Lauter concluded:

> In summary, [Tristan Garner], due to his adolescence, social circumstances, and inconsistent school attendance, was not able to utilize free will, make independent choices and exercise good judgment. He was incapable of understanding and appreciating the risks of butane inhalation. Likewise, Lee [Blasingame] and Casey [Tyree] did not appreciate the risks of butane abuse even though their social circumstances were better than [Tristan's]. Whatever advantage they had in social circumstances was dissipated by their need to impress [Tristan].

Among its other findings, the trial court observed: "The court is not persuaded that the Plaintiffs['] understanding of death or injury was diminished by their social circumstances or hardships in life." Noting that Dr. Lauter had never met any of the three teenagers to determine their actual level of understanding or maturity, the court stated, "This court finds the depositions of the parties to be more credible regarding specific knowledge and appreciation of the risks." The parents argue that the trial court improperly decided the credibility of evidence.

"Affidavits supporting and opposing summary judgment must be made on personal knowledge and must set forth such facts as would be admissible in the evidence."[11] Dr. Lauter's affidavit, however, relies upon second-hand information and hearsay.[12] Dr. Lauter testified, "I have been asked to comment on . . . *the probable level of* [each of the minor's] *understanding* regarding the risks of huffing butane." (Emphasis supplied.) His comment that the minors "did not appreciate the risks of butane abuse" is conclusory and speculative. The trial court was free to disregard those portions of Dr. Lauter's affidavit that were based on conjecture or speculation.[13]

Nevertheless, the parents contend that the affidavit of Dr. Lauter fits squarely within OCGA § 24-9-67, and that, as an expert, Dr. Lauter could base his opinion on facts proven by other witnesses. Even assuming that parts of the affidavit contained admissible testimony, Dr. Lauter's generalizations about the beliefs of adolescents

---

[11] *Sherrill v. Stockel*, 252 Ga. App. 276, 278 (557 SE2d 8) (2001). See also OCGA § 9-11-56 (e).

[12] See id.

[13] See *Brooks v. Boykin*, 194 Ga. App. 854, 856 (3) (392 SE2d 46) (1990).

about death or the propensity of adolescents to exercise poor judgment and behave irresponsibly are not appropriate yardsticks for assessing these minors' knowledge of the risk.[14] The proper test is whether each of these teens deliberately chose a perilous course of conduct, appreciated the danger, i.e., had actual and subjective knowledge of the risk, and voluntarily exposed himself or herself to the danger.[15] That test is clearly met here.

As to 13-year-old Tyree, the misuse of a flammable, gasoline-like substance such as butane is an obvious danger. Further, the evidence shows that Tyree knew that inhaling butane could kill her yet she voluntarily engaged in the risky activity. As to 17-year-old Garner and 15-year-old Blasingame, the evidence shows that they too voluntarily inhaled a flammable substance despite knowing that such intentional misuse could cause injury or death. The butane was purchased for the specific purpose of intentionally misusing it. Under these facts, the trial court did not err in finding that the three teens voluntarily assumed the risk of injury.[16]

The parents also argue that Rite Aid should be held liable because it "knew that the adolescents were going to misuse the butane, i.e., that the adolescents were going to 'assume the risk.'" They allege that a Rite Aid cashier negligently sold butane after commenting to the effect that "I know what you're going to do with this."

Blasingame testified that he was with Garner on July 25, the day before Garner's death, when Garner purchased two cans of butane at Rite Aid. Blasingame recounted, "And the woman there, her name is Sabrina, she said that she knows what we're doing, and she still sold it to us. And she said we can go to like [a named store] in Porterdale and buy Whip-its, and they don't hurt you that bad." Blasingame, however, also testified that he could not remember who sold the butane to him on July 26, and did not know whether "Sabrina" was there when he made his purchase.

The allegation that Rite Aid was aware of the intended misuse of the butane is based on hearsay. Hearsay cannot be considered in resolving summary judgment issues.[17] "[A]ll hearsay evidence, unsupported conclusions, and the like, must be stricken or elimi-

---

[14] See *Muldovan,* supra (17-year-old decedent shot in head while drinking and engaging in game of Russian roulette); *Sayed,* supra at 645 (17-year-old assumed the risk of drowning because he knew the dangers of swimming and his own limitations yet chose to swim without a flotation device); *Roberts v. King,* 102 Ga. App. 518 (116 SE2d 885) (1960) (minor involved in drag racing assumed risk of injury).

[15] See *Muldovan,* supra.

[16] See id.

[17] See *Sherrill,* supra at 278.

nated from consideration in a motion for summary judgment."[18] Thus, the trial court was free to disregard that testimony.[19]

Lastly, the parents raise a public policy argument in which they claim that Georgia "has recognized that minors need to be protected from themselves" and that "minors are unable to exercise self-protective care." They "seek judicial recognition that Georgia law takes a paternalistic approach toward minors and their potential for abuse of otherwise legal substances." They argue that in light of legislative recognition that minors need protection from the sale of certain lawful products, a jury should "determine where responsibility truly lies with regard to Casey's and Lee's injuries and Tristan's tragic death."

In enacting OCGA § 16-13-90, the legislature created an extensive list of "model glue" type substances that it deemed dangerous for purchase and inhalation by minors. Butane does not appear on that list. In selling the product to the minors, Rite Aid violated no law, government rule or regulation. While it is true that the legislature has recognized that minors should be prohibited from purchasing certain products, any change in the law must be legislatively enacted.

*Judgment affirmed. Johnson, P. J., concurs. Eldridge, J., concurs in judgment only.*

DECIDED FEBRUARY 20, 2004.

*Pulliam & Brooks, Bryan M. Pulliam, Raymond T. Brooks, Jr.,* for appellants.
*Hawkins & Parnell, Warner S. Fox, Christopher S. Keith,* for appellee.

[18] (Citation omitted.) *Butler v. Bolton Road Partners*, 222 Ga. App. 791, 794 (2) (476 SE2d 265) (1996).
[19] See id.