A05A2171. KIDD v. DENTSPLY INTERNATIONAL, INC. et al.
(629 SE2d 58)

BERNES, Judge.

Sharon Kidd appeals from an order from the Superior Court of the Eastern Judicial Circuit granting summary judgment to Dentsply International, Inc. ("Dentsply") and Dental Equipment & Merchandise Sales, Inc. ("DEMS"). For the reasons that follow, we affirm.

This Court conducts a de novo review of the evidence when reviewing a trial court's grant of summary judgment. *Garner v. Rite Aid of Ga.*, 265 Ga. App. 737 (595 SE2d 582) (2004). "To prevail at summary judgment, the moving party must demonstrate that no genuine issue of material fact remains for resolution and that the undisputed facts, when viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law." (Footnote omitted.) Id.

So viewed, the facts adduced from the record are as follows. Kidd was employed as a civilian dental assistant at the Tuttle Army Health Clinic, Hunter Air Force Base, in Fort Stewart, Georgia, when she was allegedly injured by a dental x-ray machine that came loose from the wall and struck her arm. The subject x-ray machine was manufactured by Gendex, a division of Dentsply. The U. S. Army decided to purchase the machine after a presentation made by Martin Cohen of DEMS, a sales representative for Gendex products.

Dentsply agreed to provide for the installation of the x-ray machine in its contract with the U. S. Army. Dentsply in turn contacted DEMS, one of its independent sales representatives, and it was agreed that DEMS would arrange for the installation. DEMS, through Cohen, contacted Dave Morrin, the service manager of Thompson Dental Company ("Thompson"),[1] in order to see if Thompson was interested in performing the installation. Thompson was a dealer of the equipment that DEMS represented, and DEMS and Thompson had a longstanding business relationship. Morrin gave Cohen the name of Jim Frazier, who was employed as a service technician with Thompson, and told Cohen to call him directly. Cohen arranged for Frazier to install the machine after Frazier received permission to do so from Morrin.

Frazier installed the x-ray machine on Saturday, September 8, 2001. Included with the x-ray machine were two sets of installation instructions: the "Pre-installation Template," containing basic installation instructions, and the "Installation Manual," detailing how to actually install the machine. It also included two different sized mounting plates. The installation instructions varied depending upon the type of wall to which the machine would be attached.

Cohen had marked the wall where the x-ray machine was to be mounted and informed Frazier that there was "backing in the wall," but otherwise did not give him any advice or instructions with respect to the installation of the machine. Frazier stuck a screwdriver into the wall and confirmed that there was wood behind the drywall, but otherwise did not determine its width or character. He installed the x-ray machine using his own tools, opting for the smaller mounting plate and two 3-1/2-inch long screws and mounting bolts, which the instructions indicated were appropriate for installation into a single wood stud. Cohen paid Frazier directly with a check, and Frazier submitted a form on Thompson letterhead to the Dental Clinic notifying them that the installation had been completed.

It is now undisputed that Frazier had actually installed the x-ray machine into a wall constructed with steel studs and backed with

---

[1] Thompson Dental Company is now known as Patterson Dental Supply, Inc.

three-quarter inch plywood, rather than a wall with a single wood stud. Shortly after the installation, the x-ray machine separated from the wall and allegedly struck Kidd in the arm.

1. *DEMS's Liability for the Alleged Negligent Installation of the X-Ray Machine Under the Borrowed Servant Doctrine.* Kidd argues that the trial court erred in holding that DEMS cannot be liable for the alleged negligent installation of the x-ray machine under the "borrowed servant" doctrine. We disagree.

> In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control[;] and (3) the special master had the exclusive right to discharge the servant. All of these elements must exist. . . .

(Citations and punctuation omitted.) *Food Giant v. Davison*, 184 Ga. App. 742, 743 (362 SE2d 447) (1987). "The mere fact that a servant is performing work beneficial to a third person, does not render him the servant of such third person." (Citation and punctuation omitted.) Id. at 744.

The record in this case illustrates that DEMS did not have complete control or direction over Frazier during the installation of the x-ray machine sufficient to satisfy the first element of the "borrowed servant" test. Georgia law distinguishes between the right to actually control an employee and the right to simply insist that a contractor produce certain results. *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990). The right to control means the right to tell an employee "how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow." (Citations and punctuation omitted.) Id.

Frazier stated that he required the approval of Morrin, his supervisor at Thompson, before he could agree to perform the installation of the x-ray machine. He admitted that he would have refused the installation if Morrin would not have approved, even if he had already committed to doing it. DEMS did not give Frazier any instructions with respect to how to install the x-ray machine, nor did anyone from DEMS supervise Frazier during the installation. Frazier, not DEMS, made the determination with respect to the size and number of bolts to use for the installation. Frazier used tools that were supplied by Thompson, not DEMS, to complete the installation. Finally, the installation of this type of equipment was part of Frazier's usual and regular business of his employment with Thompson. While the installation took place on a Saturday and Frazier's regular working hours with Thompson were Monday through Friday, Frazier

admitted that most technicians, including himself, frequently worked for Thompson on Saturdays.

Because this uncontroverted evidence establishes that DEMS did not have exclusive control and direction over Frazier for the installation of the x-ray machine, the trial court did not err in holding as a matter of law that Frazier was not a borrowed servant of DEMS. See *Food Giant*, 184 Ga. App. at 743-744; *Wilson v. McCullough*, 180 Ga. App. 579, 580 (1) (349 SE2d 751) (1986).

We do not agree with Kidd's assertion that this holding is inconsistent with the trial court's ruling that a question of fact existed with respect to whether Frazier was acting as an employee of Thompson at the time of the installation. Irrespective of whether Frazier was working as an employee of Thompson or working as an independent contractor at the time of the installation in question, he was not a borrowed servant of DEMS as a matter of law for the reasons set forth above.

2. *The Duty Owed to Third Parties by Dentsply and DEMS*. Kidd argues that the trial court erred when it ruled that Dentsply and DEMS could not be liable to her for Frazier's alleged negligent installation of the x-ray machine. According to Kidd, Dentsply and DEMS, its agent, had a duty to ensure that the x-ray machine was properly installed, which extended to all foreseeable persons who could be injured by the negligent installation. We disagree.

In this case, the U. S. Army contracted with Dentsply to provide for the installation of the x-ray machine. Dentsply in turn contacted DEMS, and DEMS agreed to arrange for the installation.

OCGA § 51-1-11 (a) provides that "if [a] tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract." On appeal, Kidd argues that "Dentsply's contractual duty was to the U. S. Army" and that "Dentsply and DEMS had a duty to perform this contract with good workmanship and a tort duty was owed to foreseeable persons who could be injured by negligent installation, regardless of privity." As such, Kidd admits that the duty she seeks to impose upon Dentsply and DEMS with respect to the installation of the x-ray machine is itself the consequence of Dentsply's contract with the U. S. Army. As a result, Kidd's claims must be regarded as claims of nonperformance of a contract obligation and therefore fall within the ambit of OCGA § 51-1-11 (a). See *Wood Bros. Constr. Co. v. Simons-Eastern Co.*, 193 Ga. App. 874, 875-876 (1) (389 SE2d 382) (1989). Consequently, her negligence claims are barred by that statute.

Kidd's claims of negligence likewise are not viable under OCGA § 51-2-5 (3), for several reasons. That statute provides an exception to

the general rule that employers are not liable for the work of their independent contractors unless "the wrongful act is the violation of a duty imposed by express contract upon the employer." Id. The evidence in the record demands a finding that irrespective of whether Frazier was working as an employee of Thompson, his relationship to Dentsply and/or DEMS could at the most be construed as that of an independent contractor, as neither directed or controlled the method, manner, or means of his work. See *Beck v. Paideia School*, 191 Ga. App. 183 (1) (381 SE2d 132) (1989) ("Whether the relationship of the parties under the contract for performance is that of master and servant or that of employer and independent contractor lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity with the contract.") (citation and punctuation omitted). See also *Dennis v. Malt*, 196 Ga. App. 263, 265 (1) (395 SE2d 894) (1990) ("[W]here there is a specific [agreement] to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the right of control was not retained and an independent contractor relation[ship] existed.") (citations and punctuation omitted); *Luther v. Wayne Frier Home Center of Tifton*, 264 Ga. App. 827, 828 (1) (592 SE2d 470) (2003).

Kidd's negligence claims against both Dentsply and DEMS fail under OCGA § 51-2-5 (3) because of our prior holding that "the contractual duties under which the employer would be liable for the acts of the independent contractor cannot be enforced by one not a party to the contract." (Citations omitted.) *PYA/Monarch, Inc. v. Higley*, 219 Ga. App. 199, 201 (2) (464 SE2d 630) (1995) (physical precedent only). Even if privity of contract existed, however, Kidd's claims fail because she has neglected to point out an express contractual provision that would cast liability on either Dentsply or DEMS. OCGA § 51-2-5 (3) "has been interpreted as requiring an *express* obligation by the employer to be responsible for the independent contractor's conduct." (Citations omitted; emphasis supplied.) *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 196 (1) (A) (393 SE2d 44) (1990); *Fields v. B & B Pipeline Co.*, 147 Ga. App. 875, 876-877 (250 SE2d 582) (1978) ("[T]he cases which have construed the statutory exception [(OCGA § 51-2-5 (3))] have emphasized the word 'express' and the necessity that such contractual obligation be placed upon the particular employer as opposed to any independent contractor.") (citations and punctuation omitted). See also *Dennis*, 196 Ga. App. at 266 (2); *Faubion v. Piedmont Engineering & Constr. Corp.*, 178 Ga. App. 256, 258-259 (2) (342 SE2d 718) (1986). Neither DEMS nor Dentsply "assumed or held [themselves] out to assume responsibility for the conduct" of Thompson or Frazier, and the

implied duty of good workmanship asserted by Kidd is insufficient to satisfy this express requirement. *Toys 'R' Us*, 195 Ga. App. at 197 (1) (A), (B).

3. *Strict Liability of Dentsply.* Kidd argues that the trial court erred in granting summary judgment to Dentsply with respect to her claim of strict liability for defective instructions and design. She asserts that the mounting instructions for the x-ray machine were deficient and failed to account for the loading forces associated with the installation of the machine.

Georgia law provides that a manufacturer shall be liable for a product defect, irrespective of privity, if the product "when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injur[ies] sustained." OCGA § 51-1-11 (b) (1). We agree with the trial court that the record is void of any evidence that the x-ray machine or installation instructions were defective in this case. Kidd relies exclusively upon the opinion of John McNamara, her expert witness, in support of her claim. McNamara's entire opinion, however, was based upon his erroneous presumption that the x-ray machine was installed into a single wood stud. Because it is undisputed in this case that the x-ray machine was installed into a wall constructed of steel studs with plywood backing, McNamara's opinion is inapplicable to this case.[2] Accordingly, we affirm the trial court's grant of summary judgment to both Dentsply and DEMS.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 22, 2006.

*Eugene C. Brooks IV*, for appellant.

*Ashman, Lasky & Cooper, Jeffrey W. Lasky, Inglesby, Falligant, Horne, Courington & Chisholm, Glen M. Darbyshire, Roy R. Kelly IV, Brennan, Harris & Rominger, Mason White, Hawkins & Parnell, Warner S. Fox, Christopher S. Keith, Francis C. Schenck*, for appellees.

---

[2] McNamara's affidavit of May 20, 2005, wherein he attempted to expand his opinion, will not be considered by this Court in light of the trial court's order of September 1, 2004 that limited McNamara's opinions to those rendered prior to that date. This limitation was well within the trial court's discretion. *Pope v. Firestone Tire &c. Co.*, 150 Ga. App. 396, 398 (1) (258 SE2d 14) (1979).