## A11A0305. PERDUE v. ATLANTA BUILDING MAINTENANCE COMPANY, INC. et al.
### (714 SE2d 611)

MIKELL, Judge.

Mallory Perdue, a teacher who was injured when she slipped and fell on a recently stripped and waxed school hallway, appeals from the trial court's grant of summary judgment to the Atlanta Building Maintenance Company, Inc. (ABM) and Preferred Facilities Maintenance, Inc., the contractor and subcontractor responsible for the work.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1] Our review is de novo.[2]

It is not disputed that ABM had a contract with the Atlanta Public School System (APS), owner and occupier, to provide custo-

---

[1] OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] *Pyle v. City of Cedartown*, 240 Ga. App. 445, 446 (524 SE2d 7) (1999).

dial services for W. T. Jackson Elementary School and other schools. On July 1, 2005, ABM subcontracted the custodial work at W. T. Jackson to Preferred Facility Maintenance, operated by Keith Barber. On August 1, 2007, Arthur Bridges of Preferred was at the school completing several days of stripping and re-waxing of the floors. During the morning, Bridges and other Preferred personnel had been moving furniture from the back upstairs hallway back into the classrooms, preparing to do the stripping and waxing of the hallway.

Perdue had gone to her physician for her annual physical, which lasted an hour or an hour and a half. Following this appointment, Perdue went by the school to pick up the $100 teacher gift card, provided by the governor, to buy supplies although the first day she was to report for work was the following week. She went in the front door of the school to the office and picked up her gift card. The prior spring, Perdue had been assigned to a new classroom on the lower level of the school. Before leaving for the summer, Perdue had packed up all her teaching aids in boxes. Upon arriving at the school on August 1, she found these boxes had been moved to her new classroom from her prior classroom on the upper floor of the annex. Perdue worked in her new classroom for an unknown period of time, unpacking the boxes. She then left the school for an unknown period of time, going to a friend's house and borrowing two books.

Upon returning to the school, Perdue encountered a fellow French teacher, Marian Justice; they visited for a while; Perdue returned to her room and continued working. Justice later came to Perdue's room and told her she was going back upstairs to their former classroom on the upper floor of the annex to look for some missing items. Perdue and Justice went upstairs and observed workers in the hallway who were moving furniture. According to Perdue, the workers said they had to move all of the furniture out of the hall. The workers helped Justice move a desk to the lower floor, and Perdue and Justice took a rolling cart downstairs by elevator.

Approximately an hour before Perdue's fall, Bridges encountered Perdue and another woman teacher in the hallway he was preparing to strip and wax. He instructed two other employees to help Perdue and the other woman "with whatever they got to take out of there, because they can't come back on this floor. And I actually walked them right here to this elevator and told them that."

Sylivia Graves of Preferred was supervising Bridges and the other workers that day. Because she understood there were to be no teachers in the building that day and she saw teachers in the back of the building, Graves went to the office and spoke to assistant principal Patrice Austin and school secretary Gayle Huber around 11:00 a.m. Graves asked Huber to make an announcement over the

intercom to let the teachers know "that all teachers, all staff, must leave the building." Graves was in Huber's presence as Huber made the announcement twice.

After having worked a while longer, Perdue collected her things and went up the stairs to leave. She opened the door at the top of the stairs, "walked out into this hall and immediately slipped on the floor." Perdue saw no sign on the door or in the stairwell. After falling, Perdue saw Bridges coming toward her, slipping on the floor. Perdue told Bridges not to touch her, crawled back onto the landing from which she had come, took off her shoes, and walked back to the office where she obtained assistance for her broken arm.

Perdue said that she "[did not] recall hearing any announcements at all." She also said that it was possible announcements were made regarding custodial staff or calling someone to the office and that she would tune those out. According to her, "there were no announcements made while I was there to teachers."

1. Perdue contends that summary judgment to ABM was improper because the exception found in OCGA § 51-2-5 (3) to the statutory rule of no liability for the actions of independent contractors applies.[3]

OCGA § 51-2-5 (3) provides that "[a]n employer [ABM] is liable for the negligence of a contractor [Preferred]: . . . [i]f the wrongful act is the violation of a duty imposed by express contract upon the employer [ABM]."

The APS/ABM contract provides that "[w]henever and wherever the vendor's [ABM] work creates a potential hazard to the public (e.g. slipping or tripping), the vendor shall place appropriate barriers and warning signs to provide and ensure adequate protection."

Perdue's negligence claim against ABM fails under OCGA § 51-2-5 (3) because

> the contractual duties under which the employer [ABM] would be liable for the acts of the independent contractor [Preferred] cannot be enforced by one not a party to the contract. Even if privity of contract existed, however, [Perdue's] claims fail because she has neglected to point out an express contractual provision that would cast liability on either [ABM] or [Preferred]. OCGA § 51-2-5 (3) has been interpreted as requiring an *express* obligation by the em-

---

[3] "The duty imposed upon an owner or occupier of land by OCGA § 51-3-1 is inapplicable to an independent contractor." (Citations omitted.) *Maddox v. Cumberland Distrib. Svcs. of Ga.*, 236 Ga. App. 170, 171 (1) (511 SE2d 270) (1999).

ployer [ABM] to be responsible for the independent contractor's [Preferred's] conduct.[4]

Because there is no such express obligation in the APS/ABM contract, the trial court correctly granted summary judgment to ABM on Perdue's negligence claim.

2. Perdue also contends that the trial court erred in granting summary judgment to Preferred on the ground that the intercom announcement satisfied its duty of ordinary care.

Because Preferred was an independent contractor, except for the language in ABM's contract with APS discussed in Division 1, Perdue has directed this Court to no basis for imposing on Preferred a duty to post signs or otherwise warn the owner/occupier's invitees.[5] Perdue acknowledges that OCGA § 51-3-1 imposes no independent duty on a janitorial service to inspect the premises for the safety of the occupier's invitees. Although Perdue argues here that Preferred had an obligation to use ordinary care in the floor cleaning assignment, there is no allegation below or here that Preferred was performing its task of stripping and waxing the floors negligently. Perdue argues only that Preferred had not exercised ordinary care because she had not been warned of the operation.

Preferred put forth direct evidence from Bridges that he personally advised Perdue and another woman that they could not come back on the floor and escorted them to the elevator. Further, Graves unequivocally stated that she went to the office and stood there while Huber made the announcement over the intercom that Preferred was going to begin work and teachers needed to leave the area. Huber deposed that she did not recall making such an announcement but could not say that she did not make it.

> In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. When uncontradicted and unimpeached evidence is

---

[4] (Citations and punctuation omitted.) *Kidd v. Dentsply Intl.*, 278 Ga. App. 346, 350 (2) (629 SE2d 58) (2006). Accord *Widner v. Brookins, Inc.*, 236 Ga. App. 563, 564 (2) (a) (512 SE2d 405) (1999). Cf. *Taylor v. AmericasMart Real Estate*, 287 Ga. App. 555, 557-558 (1) (a) (651 SE2d 754) (2007) (For a nonparty to have standing to enforce a contract as a third party beneficiary, it must clearly appear that one party to the contract promised another party to the contract that it would render some performance to the nonparty and that both parties to the contract intended that the contract benefit the nonparty.).

[5] See *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744 (2) (470 SE2d 270) (1996) (no duty on independent janitorial contractor to inspect premises of the occupier for the safety of the occupier's invitees).

produced as to the real facts, the inference disappears, and does not create a conflict in the evidence so as to require its submission to a jury.[6]

Preferred having satisfied its burden by coming forward with direct evidence that it discharged its only duty to Perdue, it was incumbent upon her to come forward with evidence to demonstrate that a material fact issue existed on an essential element of her claim.

Perdue's evidence, however, is not sufficient for this purpose. As set out above, secretary Huber does not recall making the announcement, but does not dispute that she might have done so. This cannot create an issue of fact in the face of Graves' unequivocal statement that she did make such an announcement. Further, Perdue cannot recall any such announcement, but neither can she specify the times when she was actually in the building. Her fellow employees, Tamara Guilday, Justice, and Austin also could not establish when they were present in the building and merely had no recollection of whether any announcements were made when they were present. At best, this is mere circumstantial evidence which cannot create an issue of fact in the face of the direct evidence presented by Preferred.[7]

Perdue also submitted the affidavits of two other teachers, Joan Hess and Ann Offen, in opposition to Preferred's motion for summary judgment. Hess' affidavit only states what she did and did not hear during an undefined period of time while she was in her classroom on the date of Perdue's fall. Her statement regarding general practices of making announcements and what would have been her response are either not based on personal knowledge or are mere speculation. Offen's affidavit suffers similar shortcomings.

Therefore, the trial court properly granted summary judgment to Preferred.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED JUNE 15, 2011 —
RECONSIDERATION DENIED JULY 18, 2011 — 

*Divine, Finney & Dorough, Kermit S. Dorough, Jr.,* for appellant.

---

[6] (Citations and punctuation omitted.) *Blue Cross & Blue Shield of Ga. v. Kell*, 227 Ga. App. 266, 271 (3) (488 SE2d 735) (1997). Accord *Wojcik v. Windmill Lake Apartments*, 284 Ga. App. 766, 770 (645 SE2d 1) (2007) (physical precedent only); *Taylor & Mathis, Inc. v. Doyle*, 219 Ga. App. 445, 446 (1) (465 SE2d 484) (1995) (physical precedent only); *Stockstill v. Prime Foods Systems*, 216 Ga. App. 192, 193 (1) (453 SE2d 784) (1995).

[7] E.g., *Blue Cross & Blue Shield of Ga.*, supra.

*Talley, French & Kendall, Michael C. Kendall, Kimberly D. Mowbray, D. Todd Markle*, for appellees.